# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**MARY KELLON CRISS,**
        **Plaintiff,**

   v.                                       Case No. 08C0498

**UNITED/DYNACARE, LLC,**
        **Defendant.**

## DECISION AND ORDER

Pro se plaintiff Mary Kellon Criss brings this Title VII retaliation action against her former employer United / Dynacare LLC, after being disciplined and ultimately terminated. She alleges that defendant discriminated against her in retaliation for filing a complaint with the Equal Employment Opportunity Commission (EEOC). Defendant now moves for summary judgment.

## I. STANDARD OF REVIEW

Summary judgment is required "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In evaluating a motion for summary judgment, the court must draw all inferences in a light most favorable to the nonmoving party. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). The mere existence of some factual dispute does not defeat a summary judgment motion; "the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The nonmoving

party may not simply rest on the allegations in her pleadings. She must show through specific evidence that an issue of fact remains. Walker v. Shansky, 28 F.3d 666, 670-71 (7th Cir.1994).

## II. BACKGROUND

Plaintiff worked for defendant from February 23, 1981 until August 23, 2007 as a medical technologist, a medical laboratory position. The terms of plaintiff's employment were governed by a collective bargaining agreement. Under the agreement, plaintiff was subject to discharge after receiving a verbal warning, a written warning and a suspension.

Plaintiff, an African-American, worked in the diagnostic immunology department performing tests on the "coagulation bench." At her October 13, 2004 performance review, she complained of difficulties with her co-worker, Marge Warnier. On November 9, 2004, plaintiff and Warnier met with department manager Patricia Pomahac about the problem, and plaintiff complained about Warnier's racist statements. Plaintiff states that Pomahac took no action and took Warnier's side. The problem continued, and the human resources department became involved. At a meeting, plaintiff made a statement that Pomahac considered disrespectful to her, and plaintiff received a verbal warning. Plaintiff denies being disrespectful, and eventually, at the request of plaintiff's union, defendant voided the warning and removed it from plaintiff's file.

In October 2005, defendant granted plaintiff a leave of absence under the Family and Medical Leave Act ("FMLA") from October 18, 2005 through January 9, 2006. While on leave, plaintiff filed a claim with the Wisconsin Equal Rights Division (ERD), cross-filed with the EEOC, alleging discrimination based on race. When plaintiff returned from leave, she received a verbal warning for failing to properly perform a test prior to her absence.

Although plaintiff continued to perform many of the same tests that she had before her leave, defendant also assigned her to some less complex tests outside the coagulation section. Defendant states that it took these steps to accommodate the need to separate plaintiff and Warnier and to broaden the range of tests plaintiff could perform. On February 13, 2006, defendant assigned plaintiff to perform some tests for the chemistry department. On one occasion, plaintiff failed to verify the test results and enter them into the computer. This prevented doctors from using the test results in connection with patient treatment. Based on this incident, defendant gave plaintiff a written warning.

On April 28, 2006, the EEOC dismissed plaintiff's employment discrimination claim, based on insufficient evidence, and on July 20, 2006, the ERD did likewise.

On June 16, 2006, Pomahac retired, and defendant eliminated the diagnostic immunology department. Defendant transferred plaintiff to the microbiology department and transferred other medical technologists to chemistry. Defendant states that it did so because the type of tests that plaintiff performed, manual tests, were transferred to microbiology, whereas the chemistry department conducted automated tests which required special equipment. Defendant also trained plaintiff in "primary processing" tasks, which were fundamental to the microbiology department.

On February 27, 2007, as the result of using an improper procedure, plaintiff reported the wrong test results for four patients, a significant error. As a consequence, Kristina Georgakas, the manager of the microbiology department, issued plaintiff a two day suspension. A subsequent disciplinary hearing upheld the suspension. On June 6, 2007, plaintiff made another significant error, reporting test results in the wrong patient records.

Georgakas suspended her for three days for the mistake. Subsequently, plaintiff failed to correctly read gram stains, a fundamental laboratory task.

On June 7, 2007, a disciplinary hearing was held, and the hearing officer ordered plaintiff to comply with a performance improvement plan. Because plaintiff had received a verbal warning, a written warning and a suspension, termination was the next step in the progressive disciplinary policy. The hearing officer noted that "failure to meet the expectations specified in the plan or continued unsatisfactory performance may result in further disciplinary action, up to and including discharge."

Georgakas created a performance improvement plan for plaintiff, setting out training checklists and twelve competency certifications to be completed within one month. Plaintiff needed to prove her competency by July 26, 2007 because she was scheduled to work that weekend. However, plaintiff failed to turn in signed competency sheets for seven of the certifications. Additionally, the gram stains competency certification form that plaintiff submitted did not establish her competency in that area. On August 23, 2007, another disciplinary hearing was held, and plaintiff was discharged for failing to complete the performance improvement plan.

On October 31, 2007, plaintiff filed a second claim with the EEOC and ERD, alleging that defendant retaliated against her for filing her first claim. On March 12, 2008, the EEOC dismissed the claim, and on May 22, 2008, the ERD did likewise.

### III. ANALYSIS

Under Title VII, "[i]t shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because [the employee] has opposed any practice made an unlawful employment practice by this subchapter, or . . . has made a

4

charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a); Amrhein v. Health Care Serv. Corp., 546 F.3d 854, 860 (7th Cir. 2008). A plaintiff can prove a retaliation claim through the direct method or the indirect, burden-shifting method. Gates v. Caterpillar, Inc., 513 F.3d 680, 686 (7th Cir.2008). Under the direct method, plaintiff must show (1) a statutorily protected activity, (2) a materially adverse action taken by the employer, and (3) a causal connection between the two. Id. Under the indirect method, plaintiff must establish a prima facie case by proving that she (1) engaged in a statutorily protected activity; (2) met her employer's legitimate expectations; (3) suffered an adverse employment action; and (4) was treated less favorably than similarly situated employees who did not engage in statutorily protected activity. Amrhein, 546 F.3d at 860. If plaintiff establishes a prima facie case, the burden shifts to the employer to produce a non-discriminatory reason for its action. Id. If the employer meets this burden, the burden shifts back to the employee to demonstrate that the proffered reason is pretextual. Id.

Plaintiff fails to demonstrate retaliation under the direct method. Although filing an EEOC complaint is a protected activity, and plaintiff was subject to an adverse employment action (her discharge certainly falls into this category), plaintiff presents no evidence that there was any causal connection between her complaint and any action that defendant took concerning her. Plaintiff offers no evidence, either direct or circumstantial, that defendant assigned her any work or took any other action because plaintiff filed the EEOC claim. Plaintiff in fact presents no evidence that any of her managers even knew that she had filed an EEOC claim.

5

Nor does plaintiff demonstrate a prima facie case under the indirect method. Plaintiff fails to present any evidence that she satisfied defendant's legitimate expectations. The evidence indicates that plaintiff made several serious performance errors, failed to complete her performance improvement plan and failed to become competent in reading gram stains. Further, plaintiff was warned, written up, and suspended before ultimately being terminated. Even assuming that plaintiff could show that she met defendant's legitimate expectations and was treated less favorably than her co-workers (and that her claims are not barred by the statute of limitations, 42 U.S.C. § 2000e-5(e)), defendant satisfies its burden of providing a non-discriminatory reason for all of its actions regarding plaintiff. Plaintiff complains of her change of duties, but defendant explains that it changed plaintiff's duties after she returned from leave because of the need to separate her from Warnier and to train her on tests other than coagulation. Defendant also explains its transfer of plaintiff to the microbiology department of which plaintiff also complains. Defendant states that when it disbanded the diagnostic immunology department upon Pohamac's retirement, it sent all manual tests to microbiology and all automated tests to chemistry (which had the lab equipment to perform them). Plaintiff performed manual as opposed to automated tests and thus it made sense to transfer her to microbiology instead of chemistry.

Plaintiff fails to meet her burden of establishing that any changes that defendant made that affected her were pretextual. She presents no evidence that the actions she complains of were anything other than legitimate business decisions. Plaintiff asserts that defendant decided to terminate her when she was on leave. But defendant employed plaintiff for almost two years after her leave ended. Plaintiff suggests that Pohamac retired

and the entire diagnostic immunology department was disbanded simply to terminate her. But there is no evidence of this either.

## IV. CONCLUSION

Therefore,

**IT IS ORDERED** that defendant's motion for summary judgment is **GRANTED**, and this case is **DISMISSED**.

Dated at Milwaukee, Wisconsin this 27 day of August, 2009.

/s_____
LYNN ADELMAN
District Judge